UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| DANIEL MORALES CAMACHO, | ) | No. CV-05-5093-CI |
| | ) | |
| Petitioner, | ) | REPORT AND RECOMMENDATION TO |
| | ) | DISMISS WITH PREJUDICE |
| v. | ) | CLAIMS FOR HABEAS RELIEF |
| | ) | |
| HAROLD CLARK, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

BEFORE THE COURT on Report and Recommendation is Respondent's Answer and Memorandum of Authorities, which the court construes as a Motion to Dismiss under Rule 8, Rules Governing § 2254 Cases. (Ct. Rec. 11, 15.) Petitioner, who is proceeding pro se, is in the custody of the Washington State Department of Corrections, currently confined at the Florence Correctional Center, Florence, Arizona. Assistant Attorney General Alex A. Kostin represents Respondent. The parties have not consented to proceed before a magistrate judge.

**ISSUES**

On January 28, 2003, following a jury trial, petitioner was convicted in Franklin County Superior Court of first-degree murder and attempted first-degree murder. (Ct. Rec. 12, Ex. 1.) Petitioner was sentenced to concurrent terms of 380 and 300 respectively. Petitioner seeks federal habeas relief, raising two claims: (1) violation of due process based on allegations his conviction was not supported by substantial evidence, and (2) a

REPORT AND RECOMMENDATION TO DISMISS WITH
PREJUDICE CLAIMS FOR HABEAS RELIEF - 1

1  failure of the trial court to permit a jury instruction on the

2  lesser included offense of manslaughter.   Respondent moves for

3  dismissal with prejudice of both claims.

4                              **FACTS**

5      The state court summarized the facts surrounding Petitioner's

6  convictions as follows:

7      Mr. Camacho confessed to the crimes in December 2002.  He
       told police that he had been visiting with his children at
8      his estranged wife's trailer at about 8 p.m. the night of
       the shootings.  His three-year-old daughter Daisy had an
9      upset stomach, and he asked to stay to care for her, but
       Mrs. Camacho insisted that he leave because she was
10     expecting a "visitor."  When asked if she had a boyfriend,
       she denied it in a half-joking manner.

11

12     Mr. Camacho left, but before doing so, he unlatched
       the kitchen window and a window adjacent to the front door
13     of the residence.  Upon leaving, he returned to a trailer
       he was then sharing with his father.  He said he kept
14     thinking of his wife with another man and decided to go
       back to the residence.  He obtained a key to his father's
15     bedroom from his brother Oscar, unlocked the door and
       retrieved a .22-caliber semi-automatic pistol.  He told
16     his brother to tell anyone who called that he was not
       there and that he did not know where he was.  He tucked
17     the weapon into the waistband of his pants and returned to
       his wife's trailer, which was only a short distance away.
18     That occurred at approximately 8:30 p.m.

19     Once at his wife's trailer, he climbed under it
       through a hole in the skirting used for maintenance
20     access.  He removed a section of the air conditioning duct
       and listened to his wife talking with an adult male.  He
21     attempted unsuccessfully to enter the trailer through the
       duct work.  He then crawled out from underneath the
22     trailer and tried to enter through the windows he had left
       unlatched.  He found them completely closed and latched.
23     He then propped a wooden ladder he found near the trailer
       and peered into the kitchen window.  He saw his wife and
24     an adult male watching television.  On three separate
       occasions he threw potatoes at the front door in an effort
25     to get them to answer.  Mr. Camacho told police that he
       wanted them to open the door so he could shoot and kill
26     both of them.  Nobody opened the door.

27     Mr. Camacho waited several hours until all of the
       lights in the trailer were turned off.  During that time,
28     he secreted himself under the steps.  The television was
       turned off about 11:30, and Mr. Camacho believed that his

wife and the man were engaging in sexual relations.

At about 2 a.m., Mr. Camacho heard a conversation above him on the stairs.  He heard the couple exchange goodnights and heard the door close, observing the adult male walking away.  Mr. Camacho then approached the man from the rear and put the pistol to the back of his head. He told the man that nobody makes a fool out of him, and he noticed that the man was wearing a jacket that he believed was his.  He told the man, "You can only imagine who I am."  As the man ran forward, Mr. Camacho shot, believing he struck the man in the foot.  Mr. Camacho fired again, hitting the man in the back and causing him to fall.  Mr. Camacho then walked up to the man, bent or squatted over him and shot him in the back of the head to insure he was dead.

Consistent with Mr. Camacho's description of the events, the medical examiner testified that an examination of the body revealed a grazing wound, a wound to the back and a wound to the back of the head.

After the shooting, Mr. Camacho returned to the trailer and began knocking on the door.  Mr. Camacho told his wife that he had shot the man and that they needed to get him medical attention.  Mr. Camacho pleaded with his wife to open the door, but she refused.  He told police he wanted her to open the door so he could kill her too.

Mr. Camacho told police that he then fired his pistol twice through the window at his wife.  He then broke the window and climbed through, entering the trailer because he wanted to find his wife and kill her.  When he did not find his wife there, he left for Mexico and disposed of the gun along the way.

Mrs. Camacho had escaped through the back door of the trailer and had run to a neighbor's residence.  She was then taken to the hospital where doctors found a bullet lodged in her neck near the jugular vein.

(Ct. Rec. 12, Ex. 4 at 3-5.)

## FEDERAL HABEAS: STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"], Pub. L. No. 104-132 (codified in scattered sections of 8, 15, 18, 22, 28, 40, 42, 50 U.S.C.), governs the disposition of federal habeas proceedings.  Under the AEDPA, an application for a writ of habeas corpus "shall not be granted with respect to any

1  claim that was 'adjudicated on the merits' unless the adjudication
2  (1) resulted in a decision that was contrary to or involved an
3  unreasonable application of, clearly established Federal law, as
4  determined by the Supreme Court of the United States; or (2)
5  resulted in a decision that was based on an unreasonable
6  determination of the facts in light of the evidence presented in the
7  State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). Here, the
8  analysis of the sufficiency of the evidence claim is confined to the
9  first prong, (d)(1).

10                          **SUFFICIENCY OF THE EVIDENCE**

11       Petitioner first contends he was denied due process because
12  there was insufficient evidence to establish the elements of the
13  crimes.   He argues although there was some evidence of
14  premeditation, there was other evidence his actions were the result
15  of "sudden heat or passion." Petitioner further contends he is
16  entitled to the favorable inferences of that evidence and to an
17  evidentiary hearing to permit this court the opportunity to
18  reevaluate the testimony of the witnesses.

19       The Ninth Circuit has held a federal court, under habeas,
20  reviews a state court's sufficiency of the evidence determination
21  under 28 U.S.C. § 2254(d)(1). The court must determine whether the
22  decision of the state court reflected an "unreasonable application
23  of" *Jackson v. Virginia*, 443 U.S. 307 (1979), and *In re Winship*, 397
24  U.S. 358 (1970). *See also Juan H. v. Allen*, 408 F.3d 1262, 1275 &
25  n.13 (9th Cir. 2005), *petition for cert filed* November 7, 2005 (to
26  prevail on a sufficiency of the evidence claim, a habeas petitioner
27  must demonstrate "after viewing the evidence in the light most
28  favorable to the prosecution, [that no] rational trier of fact could

REPORT AND RECOMMENDATION TO DISMISS WITH
PREJUDICE CLAIMS FOR HABEAS RELIEF - 4

have found the essential elements of the crime beyond a reasonable doubt"). Furthermore, a reviewing court may consider circumstantial, as well as direct evidence and allow the government benefit of all reasonable inferences from facts proven to facts sought to be established. *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982).

Here, the state court determined the following with respect to the element of premeditation:

> Despite Mr. Camacho's testimony that he did not act intentionally – that he was blinded by jealousy and that the bullets "escaped" him – the jury found that he had acted with premeditation. Clearly, the evidence supports that determination. The record establishes that Mr. Camacho had lain in wait for more than five hours and that he had attempted to enter the trailer to kill the parties the entire time. Moreover, he shot the adult male three times and shot twice at Mrs. Camacho after the previous shooting. Those circumstances support a verdict that he had considered his crimes beforehand with deliberation, reflection and reasoning. There is sufficient evidence beyond a reasonable doubt. *State v. Green* [94 Wn.2d 216, 221, 616 P.2d 628 (1980) [quoting *Jackson v. Virginia*, 443 U.S. 307 (1979)]].

(Ct. Rec. 12, Ex. 4 at 5-6.)

In his memorandum, Petitioner sets forth the state's evidence in support of premeditation with appropriate references to the record. (Ct. Rec. 2 at 7-12.) Undisputed facts include the following: (1) Petitioner had visited at the residence earlier in the evening, had requested and been denied the opportunity to spend the night; (2) prior to leaving the residence, Petitioner unlatched the kitchen window and a window adjacent to the front door (Ct. Rec. 12, Ex. 9 at 220, 260); (3) Petitioner returned to his father's home where he retrieved a .22 caliber semi-automatic pistol (Ct. Rec. 12, Ex. 9 at 261); (4) after unsuccessful attempts to enter the trailer through duct work, Petitioner waited five hours secreted under the

trailer steps to confront the victims (Ct. Rec. 12, Ex. 9 at 261-263); (5) Petitioner fired the fatal shots (Ct. Rec. 12, Ex. 9 at 265-268); (6) Petitioner admitted he still loved his estranged spouse and was jealous of her new relationship (Ct. Rec. 12, Ex. 9 at 286); (7) Petitioner admitted to his brother he shot both victims (Ct. Rec. 12, Ex. 11 at 140); (8) shell casings and autopsy results supported a conclusion of homicide by the firearm at issue (Ct. Rec. 12, Ex. 9 at 202-212, 234-240); and (9) Petitioner made recorded inculpatory admissions describing the events to law enforcement in Maricopa, Arizona, following his arrest in that jurisdiction (Ct. Rec. 12, Ex. 9 at 223, 257-269).

Under Washington law, premeditation may be proved by circumstantial evidence, such as the existence of a motive or use of a weapon. *State v. Clark*, 143 Wn.2d 731, 769, 24 P.3d 1006, *cert. denied*, 534 U.S. 1000 (2001). Additionally, an inference of premeditation may be established by a wide range of proven facts. *State v. Finch*, 137 Wn.2d 792, 975 P.2d 967, *cert. denied*, 528 U.S. 922 (1999). Petitioner does not provide this court with clearly established Supreme Court case law that the state's case law interpretation and use of circumstantial evidence to support premeditation is violative of the federal constitution. In contrast, federal appellate law permits such evidence. *See Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction); *DeLisle v. Rivers*, 161 F.3d 370, 389 (6th Cir. 1998), *cert. denied,* 526 U.S. 1075 (1999) (it is not unusual for evidence of premeditation and intent to kill in a murder trial to be entirely circumstantial). Thus, this court is unable to

conclude the state court opinion violated clearly established Supreme Court law.  Accordingly, **IT IS RECOMMENDED** Plaintiff's claim for relief be **DISMISSED WITH PREJUDICE.**

### EVIDENTIARY HEARING

In determining whether a petitioner is entitled to an evidentiary hearing under AEDPA, the district court must determine whether the petitioner has "failed to develop the factual basis of a claim in State court" if the applicant has not "failed to develop" the facts in state court, the district court may proceed to consider whether a hearing is appropriate or required under *Townsend v. Sain*, 372 U.S. 293 (1963) [overruled on other grounds in *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 5 (1992)]; *Insyxiengmay v. Morgan*, 403 F.3d 657, 669-70 (9th Cir. 2005).  Because a federal court may not independently review the merits of a state court decision without first applying the AEDPA standards, a federal court may not grant an evidentiary hearing without first determining whether the state court's decision was an unreasonable determination of the facts. *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (rejecting a line of Ninth Circuit cases requiring "federal habeas courts to review the state court decision de novo before applying the AEDPA standard of review"). *Townsend* establishes a petitioner is entitled to an evidentiary hearing if he can show: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court

hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair hearing. *Townsend*, 372 U.S. at 313. If a petitioner can establish any one of those circumstances, then the state court's decision was based on an unreasonable determination of the facts and the federal court can independently review the merits of that decision by conducting an evidentiary hearing. *See Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir.), *cert. denied*, ___U.S.___, 125 S. Ct. 809 (2004) ("[i]f, for example, a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an 'unreasonable determination' of the facts.").

Petitioner has failed to establish grounds under *Townsend* to warrant an evidentiary hearing. Rather, he seeks only a re-evaluation of the credibility of the witnesses. Credibility may not be re-determined by this court. *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983) (holding "Title 28 U.S.C. § 2254(d) gives federal habeas corpus courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state court, but not by them"); *see also Brown v. Poole*, 337 F.3d 1155, 1160 n.2 (9th Cir. 2003) ("[w]e would indeed defer to all factual findings of the state court that are reasonable 'in light of the evidence presented in the state court proceedings'"); *Greene v. Henry*, 302 F.3d 1067, 1072 (9th Cir. 2002) ("[U]nder the AEDPA, we are required to 'defer to state court findings of fact unless based on an unreasonable determination of the facts in light of the evidence presented' in the state court proceedings"). Here, there is no dispute as to the events which occurred; the only fact in dispute is whether the state

presented evidence beyond a reasonable doubt of premeditation. Petitioner does not offer any new evidence to support his theory he did not act with premeditation and there is no evidence the state failed to provide him an opportunity to present his theory of the case to the jury.  Thus, he has failed to satisfy the requirements of *Townsend.*  To the extent Petitioner moves for an evidentiary hearing, his Motion is **DENIED.**

### LESSER INCLUDED INSTRUCTION

Petitioner contends the trial court erred when it failed to submit a lesser included instruction on manslaughter.  Petitioner notes he admitting shooting at his estranged spouse twice, but also indicated he intended to kill her only after he crawled through the window after he shot her.  He argues this is an important distinction because a fact finder could have concluded he fired the gun at the window to open it and recklessly, rather than with premeditation, hit her.  Thus, his theory of the case would have supported the first-degree manslaughter instruction.  In addressing this claim, the appellate court stated:

> In determining whether to give a lesser-included-offense instruction, this Court applies a two prong test. *State v. Berlin*, 133 Wn.2d 541, 545, 947 P.2d 700 (1997); *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978).  Under the legal prong, we determine if each of the elements of the lesser offense is a necessary element of the greater charged offense, and under the factual prong, we consider whether the evidence supports an inference that only the lesser offense was committed. *State v. Berlin, supra* at 548-49.  A mere possibility that the jury might disbelieve the State's evidence is not justification for a lesser-included-offense instruction. *State v. Pettus*, 89 Wn. App. 688, 700, 951 P.2d 284, *review denied*, 136 Wn.2d 1010 (1998).
>
> Here, there is no dispute as to the legal prong.  See *State v. Warden*, 133 Wn.2d 559, 563, 947 P.2d 708 (1997). The parties disagree, however, as to whether the factual prong is satisfied.

REPORT AND RECOMMENDATION TO DISMISS WITH
PREJUDICE CLAIMS FOR HABEAS RELIEF - 9

Assuming for the sake of argument that the factual prong was met and that the trial court erred in refusing the instruction, the error would nonetheless not warrant a new trial for Mr. Camacho.  That is because although the trial court instructed the jury on first- and second-degree murder, the jury rejected the second-degree murder offense and chose to convict Mr. Camacho of first-degree murder.  That renders harmless any error in failing to instruct on manslaughter.  *See State v. Guilliot*, 106 Wn. App. 355, 22 P.3d 1266, *review denied*, 145 Wn.2d 1004 (2001) (trial court's failure to instruct on lesser-included offense of first and second-degree manslaughter harmless where court instructed on first- and second-degree murder but jury convicted the defendant of first-degree murder); . . . .

If the jury believed Mr. Camacho was less culpable because he acted in the heat of passion, logically it would have returned a verdict on the lesser offense of second-degree murder.  But the jury rejected that intermediate offense and elected to convict him on the highest offense.  Thus, because the factual question posed by the omitted manslaughter instruction was necessarily resolved adversely to Mr. Camacho by the jury's rejection of second-degree murder, the alleged error does not require reversal.  *State v. Guilliot*, supra.

(Ct. Rec. 12, Ex. 4 at 6-7.)  As noted by Respondent, under Ninth Circuit law, the failure to instruct on a lesser-included offense in a non-capital case does not present a federal constitutional question.  *Whindham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998). Under the instructions as provided by the trial court, Petitioner was able to argue his theory to the jury--that his actions were not premeditated but driven by passion and jealousy.  Therefore, the instructions as given did not create fundamental unfairness by denying Petitioner an opportunity to present his theory of the case, and the claim is not cognizable on federal habeas review. See *Beardslee v. Woodford,* 358 F.3d 560 (9th Cir. 2004), *cert. denied.,* ___ U.S. ___, 125 S. Ct. 281 (2004); *Solis v. Garcia,* 219 F.3d 922, 929-930 (9th Cir. 2000), *cert. denied*, 534 U.S. 839 (2001);  *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir.), *cert. denied*, 469 U.S.

838 (1984). Additionally, in light of the jury's verdict finding Petitioner guilty of first-degree murder and attempted first-degree murder, this court cannot say the error identified by the state court was prejudicial. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Accordingly, **IT IS RECOMMENDED** the claim and Petition be **DISMISSED WITH PREJUDICE.**

### OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report **within TEN (10) days** following service with a copy thereof. Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying any the portions to which objection is being made, and the basis therefor. **If it deems such a response necessary, the court will direct the parties to respond to any objections.** Attention is directed to FED. R. CIV. P. 6(e), which adds another three (3) days from the date of mailing if service is by mail.

A district judge will make a de novo determination of those portions to which objection is made and may accept, reject, or modify the magistrate judge's determination. The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon. The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), FED. R. CIV. P. 73; LMR 4, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a

REPORT AND RECOMMENDATION TO DISMISS WITH
PREJUDICE CLAIMS FOR HABEAS RELIEF - 11

1    court of appeals; only the district judge's order or judgment can be

2    appealed.

3        The District Court Executive is directed to file this Report

4    and Recommendation and provide copies to Petitioner and counsel for

5    Respondent and the referring district judge.

6        **DATED January 17, 2006.**

7

8                        _____
                              **S/ CYNTHIA IMBROGNO**
9                         **UNITED STATES MAGISTRATE JUDGE**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION TO DISMISS WITH
PREJUDICE CLAIMS FOR HABEAS RELIEF - 12